UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| PAULETTA SUE MORROW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-CV-309 |
| ) | (PHILLIPS/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Summary Judgment [Doc. 12]. The Plaintiff Pauletta Sue Morrow ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Denise Pasvantis to deny her benefits, which was the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On September 20, 2006, the Plaintiff applied for Disability Insurance Benefits ("DIB") [Tr. 95-96], and Supplemental Security Income ("SSI") [Tr. 102-07]. The Plaintiff alleged a disability onset date of September 9, 2001. [Tr. 97]. After denials at the initial [Tr. 55-58], and reconsideration levels [Tr. 59-62, 73-74], the Plaintiff requested a hearing [Tr. 75-76]. On January

1

12, 2009, three days prior to her hearing, the Plaintiff's representative submitted a brief to the ALJ, and amended her alleged onset date to June 30, 2005. [Tr. 201]. On January 15, 2009, the Plaintiff, represented by counsel, appeared and testified before ALJ Pasvantis. [Tr. 19-43]. On April 24, 2009, ALJ Pasvantis determined that the Plaintiff was not disabled because she could perform a significant number of light jobs. [Tr. 11-18]. The Plaintiff requested Appeals Council review [Tr. 6-7], but the Appeals Council declined review on May 18, 2010, making the ALJ's decision the Commissioner's final decision in this matter [Tr. 1-5]. The Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2006.

2. The claimant has not engaged in substantial gainful activity since June 30, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical radiculopathy, a left shoulder injury, status post arthroscopic surgery with subacromial decompression and debridement of a left rotator cuff tear, and a depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) and 416.967(b) except that she can sit for more than 3 but less than 6 hours in an 8 hour workday, and lifting/carrying and pushing/pulling are limited to 5 pounds occasionally, although she can do same, using both hands together, 20 pounds

occasionally and 10 pounds frequently. She is able to understand, remember, and carry out simple and low level detailed job instructions, and will have some but not substantial difficulty with concentration and persistence, working with the public, and adapting to changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 30, 1955 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CRF 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2005 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13-18].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work

available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

The Plaintiff argues that the decision of the ALJ was not based on substantial evidence. Specifically, the Plaintiff argues that the ALJ erred by (A) finding her less than fully credible; (B) relying upon Vocational Expert ("VE") testimony without first ascertaining that she had an adequate foundation for her opinions; and (C) making findings that were directly contrary to the record. [Doc. 9 at 8-13]. The Commissioner responds that the decision of the ALJ is supported by substantial evidence. Specifically, the Commissioner asserts that (A) the ALJ's credibility finding is entitled to deference; (B) the VE presented acceptable testimony when stating that she was relying on her twenty years of experience; and (C) at best, the Plaintiff discovered harmless errors in the ALJ's decision. [Doc. 13 at 9-14].

### A. The ALJ's Credibility Determination

The Plaintiff argues that the ALJ committed error by finding her less than fully credible. [Doc. 9 at 8]. The Plaintiff asserts that the ALJ provided a generalized statement regarding her credibility, and thus, failed to satisfy the requirements of SSR 96-7p. [Doc. 9 at 9]. The Commissioner responds that the ALJ's credibility finding is entitled to deference. [Doc. 13 at 11].

The Sixth Circuit Court of Appeals has held that "[t]here is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007) (internal citation and quotation omitted). An ALJ is not bound by a claimant's subjective complaints of pain, however, and may "consider the credibility of a claimant when making a determination of disability." Id. If supported by substantial evidence of the record, an

ALJ's credibility determination is "to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

The Court finds that the ALJ provided specific reasons for discrediting the Plaintiff's subjective complaints of pain aside from a general statement that the intensity, persistence, and limiting effects of her symptoms were not credible.

First, the ALJ found that the Plaintiff's testimony regarding her daily activities was "inconsistent with the degree of functional limitations alleged." [Tr. 15]; see Kidd v. Comm'r of Soc. Sec., 283 F. App'x 336, 342 (6th Cir. 2008) (finding an ALJ may "consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments" when evaluating a claimant's credibility). At the hearing, the Plaintiff testified that her typical day included dressing herself, preparing breakfast, watching television, and doing small things around the house periodically. [Tr. 40-41]. The Plaintiff also testified that she does laundry in shifts and that she vacuums. [Tr. 35-36]. The record also supports the ALJ's statement regarding the Plaintiff's daily activities. For example, in an October 2006 "Function Report," the Plaintiff indicated that her daily activities included preparing her seventeen-year old son for school, making breakfast, making beds, doing laundry and dishes, cleaning her home, and preparing supper for her husband and son. [Tr. 138]. In addition, the Plaintiff noted that she attended church on a regular basis and shopped "at times." [Tr. 142]. Notably, while the Plaintiff's testimony was vague about the extent of her activities with her grandchildren, the record reveals that the Plaintiff reported that her son and three grandchildren had moved in with her and that she was the babysitter for the three grandchildren. [Tr. 571].

7

Second, the ALJ indicated that she discredited the Plaintiff's subjective complaints of pain after having the opportunity to observe the Plaintiff at the hearing. See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6th Cir. 1981) (finding that "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly'") (quoting Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383, 387 (6th Cir. 1978)). The ALJ stated that the Plaintiff "asserted that she can sit no more than 10 minutes without interruption, yet demonstrated that she could sit for 30 minutes at a time at [the] hearing." [Tr. 15]. The medical record also supports the ALJ's observation that the Plaintiff could sit for more than 10 minutes without interruption. For example, Eva Misra, M.D., examined the Plaintiff in March 2007 and opined that she was capable of sitting, with normal breaks, for a total of approximately six hours in an eight-hour workday. [Tr. 428]. In addition, the Plaintiff saw C.M. Salekin, M.D., in May 2006. Dr. Salekin opined that the Plaintiff was capable of sitting for less than six hours, but more than three hours per eight-hour day. [Tr. 371].

Moreover, the ALJ accurately discussed portions of the Plaintiff's testimony that failed to indicate disabling pain. [Tr. 15]. At the hearing, the Plaintiff testified that her medications helped alleviate her pain. [Tr. 29-30]. When asked to rate her pain on a scale of one through ten, the Plaintiff rated her pain "about a one." [Tr. 30]. Further, the Plaintiff testified that she had not "experienced any side effects [from her medications] that she could think of." [Tr. 31]; see Moses v. Comm'r of Soc. Sec., No. 08-4626, 2010 WL 4536969, at *4 (6th Cir. Nov. 3, 2010) (upholding an ALJ's credibility determination when the plaintiff "regularly denied motor weakness or difficulty walking" and experienced no side effects from medication).

Accordingly, the Court finds that the ALJ's credibility determination is supported by

substantial evidence.

**B. VE Testimony**

The Plaintiff argues that the ALJ erred by relying upon the VE's testimony without first determining that the VE had an adequate foundation for her opinions. [Doc. 9 at 9]. Specifically, the Plaintiff contends that the VE could not explain how her experience led to the conclusion that jobs were available in the national economy which the Plaintiff could perform. [Doc. 9 at 9]. The Commissioner asserts that the Plaintiff's argument stems from SSR 00-4p and its requirement that an ALJ ask a VE if her testimony is consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). [Doc. 13 at 13]. The Commissioner contends that the ALJ and the VE complied with SSR 00-4p in this case. [Doc. 13 at 13].

When evaluating the functional requirements of potential jobs that exist in the national economy, an ALJ may rely on publications such as the DOT or obtain the testimony of a VE. 20 C.F.R. §§ 404.1566(d), (e), 416.966(d), (e). The Sixth Circuit Court of Appeals has held that an ALJ may rely on the testimony of a VE, even when the VE's testimony does not strictly comply with the DOT. Conn v. Sec'y of Health & Human Servs., 51 F.3d 607, 610 (6th Cir. 1995). However, "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and the information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *2. If the provided evidence conflicts, an ALJ must "obtain a reasonable explanation for the apparent conflict." Id. A reasonable ground to rely upon when resolving a conflict with the DOT is a VE's own "experience in job placement or career counseling." Id.

In this case, the VE relied on her experience on two occasions when answering the questions of the Plaintiff's attorney during cross-examination. First, the VE testified that the DOT does not account for the action of one-handed work. [Tr. 50]. The VE further testified, however, that based on her twenty years of experience of preparing over 1,000 job analyses, the one-handed restriction was available in the positions that she believed the Plaintiff could perform. [Tr. 50]. Second, when the Plaintiff's attorney asked the VE how she could testify about jobs that accommodated a sit/stand option, the VE stated that she was relying on her own experience. [Tr. 51].

During re-examination of the VE, the ALJ asked the VE if her testimony was consistent with the DOT. [Tr. 52]. The VE responded that her testimony was consistent with the DOT except when she testified regarding the dominant hand restriction and the sit/stand option, which were discussed by the Plaintiff's attorney during cross-examination. [Tr. 52].

Notably, the ALJ's residual functional capacity determination did not include a limitation of one-handed work or a sit/stand option. [Tr. 14]. As a result, the ALJ found that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." [Tr. 18]; see Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010) (finding that "[t]o establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT").

The Court finds that the VE could reasonably rely on her twenty years of experience when answering questions on cross-examination regarding limitation not contained within the DOT. SSR 00-4p specifically allows a VE to rely upon her own experience when resolving an apparent conflict with the DOT.

## C. Findings Contrary to the Record

The Plaintiff asserts that the ALJ made certain findings that are contrary to the record. [Doc. 9 at 13]. The Commissioner contends that, at best, the Plaintiff has discovered a few harmless errors. [Doc. 13 at 14-16]. The Court will address each finding below.

### 1. The Report of Dr. Salekin

First, the Plaintiff argues that the ALJ improperly characterized the report of Dr. Salekin. Specifically, the Plaintiff contends that while the ALJ found that Dr. Salekin opined that the Plaintiff "can push/pull on an unlimited basis," Dr. Salekin's report reflects that he noted pushing and pulling were limited. [Tr. 371]. The Commissioner responds that the Plaintiff has not indicated how she was harmed by this misstatement. [Doc. 13 at 14].

The Court agrees with the Commissioner that the Plaintiff fails to indicate how she was harmed by this error. While the ALJ misstated Dr. Salekin's finding that the Plaintiff's ability to push and pull were limited, the ALJ's RFC determination did not reflect that Plaintiff was unlimited in pushing and pulling. The ALJ found that the Plaintiff's ability to push and pull was "limited to 5 pounds occasionally, although she can do same, using both hands together, 20 pounds occasionally and 10 pounds frequently." [Tr. 14]. While the ALJ misstated Dr. Salekin's opinion regarding the Plaintiff's ability to push and pull, she did not rely on this misstatement in his RFC determination.

Therefore, the Court finds that the ALJ's misstatement regarding Dr. Salekin's pushing and pulling opinion is harmless error.

11

## 2. The Opinion of Nurse Practitioner Joan James

Second, the Plaintiff argues that the ALJ improperly discounted the opinion of her treating nurse practitioner ("NP") Joan James, because she was not an acceptable medical source. [Doc. 9 at 13]. Specifically, the Plaintiff contends that the ALJ arrived at this conclusion without evaluating the evidence as required by SSR 06-03p. [Doc. 9 at 13]. The Commissioner responds that the ALJ provided a well-reasoned discussion for rejecting NP James's decision. [Doc. 13 at 15].

The evidence of record demonstrates that on January 13, 2009, NP James submitted a two-page form regarding the Plaintiff's work-related limitations. [Tr. 629-30]. Among other statements, NP James agreed with the form's statement that the Plaintiff would sometimes need to lie down at unpredictable intervals during a work shift. [Tr. 629]. NP James also believed that this need would occur frequently. [Tr. 629]. In addition, NP James also opined that the Plaintiff would be absent from work more than three times each month. [Tr. 630].

Only an "acceptable medical source," i.e. a physician, can be a treating source and be given controlling weight. SSR 06-03p, 2006 WL 2329939, at *2. Nurse practitioners are not defined as an "acceptable medical sources," but rather as an "other sources." Id.; see 20 C.F.R. §§ 404.1513(d), 416.913(d). SSR 06-03p explains that information from an other source "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." 2006 WL 2329939, at *2. The ruling recognizes that:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed

> "acceptable medical sources," under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with other evidence in the file.

Id. at *4.

With regard to explaining the consideration given to opinions from "other sources," SSR 06-03p states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources,"* or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Id. at *6 (emphasis added).

Only an "acceptable medical source," i.e. a physician, can be a treating source and be given controlling weight. Id. When determining the weight that should be accorded to "other sources," the ALJ can apply the following factors: whether the relationship is an examining relationship; whether the relationship is a treating relationship; the length, nature, and extent of treatment; the supportability of the opinion; the opinion's consistency with other evidence in the record; specialization; and other factors which tend to support or contradict the opinion. Id. at 5.

In this case, NP James is not an "acceptable medical source," and thus, her opinion is never entitled to controlling weight. However, NP James is an "other source," and the Court must determine the proper weight to be accorded to her opinion by employing the factors outlined in SSR 06-03p.

13

In her decision, the ALJ noted NP James's opinion and provided reasons for discounting the opinion. The ALJ stated that NP James's opinion is "utterly unsupported by the sparse clinical notes showing essentially routine care." [Tr. 16]. In addition, the ALJ noted that "nurse practitioners are not considered to be acceptable medical sources." [Tr. 16].

The ALJ's discussion for discounting NP James opinion, although concise, was an explanation that satisfied the general requirements of 06-03p. The ALJ identified NP James's opinion and generally explained the weight she afforded the opinion. Substantively, the ALJ's explanation of her rejection of NP James's opinion identified many of the factors contemplated by 06-03p: supportability of the opinion and other factors which tend to support or contradict the opinion.

Accordingly, the Court finds that the ALJ's discussion of NP James's opinion informed the Plaintiff of the ALJ's reasons for discounting the opinion and afforded her the general notice contemplated by SSR 06-03p.

### 3. Activities of Daily Living

The Plaintiff provides the Court with three statements made by the ALJ concerning her activities of daily living. [Doc. 9 at 13-15]. The Plaintiff appears to argue that the ALJ incorrectly asserted that she can fold laundry and do dishes, take care of her grandchildren, and can follow a two-hour movie. [Doc. 9 at 13-14]. The Commissioner contends that while there are some instances where the ALJ may have overstated the extent of the Plaintiff's activities, such overstatements are merely a matter of degree because the Plaintiff continues to engage in the activities. [Doc. 13 at 15].

Other than conclusory statements provided by the Plaintiff, the Plaintiff fails to indicate to

the Court how such statements prejudiced her. The Court notes that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, — U.S. —, 129 S. Ct. 1696, 1706 (2009). While the Plaintiff has failed to articulate how such statements were prejudicial, the Court will address the ALJ's statements regarding the Plaintiff's daily activities.

The Court agrees with the position of the Commissioner. The Plaintiff continues to perform the activities discussed in the ALJ's decision. The Plaintiff continues to fold laundry and do dishes. While the Plaintiff testified that it takes her longer to fold laundry and do dishes, she still performs such activities. [Tr. 26]. In addition, the Plaintiff testified that she enjoyed visits from her grandchildren. [Tr. 37]. While the Plaintiff's testimony was vague regarding the extent of her activities with her grandchildren, the record reflects, and as noted *supra*, that the Plaintiff reported being a "babysitter" to three of her grandchildren. [Tr. 571]. Although the Plaintiff testified that she would be distracted and that she would have to get up and move around during a two-hour movie, the ALJ stated that the Plaintiff could "*follow* a 2 hour movie." [Tr. 15; 37-38]. Moreover, the ALJ stated that the Plaintiff watches television which is consistent with her testimony that she enjoyed television, particularly the program "NCIS." [Tr. 15; 37-38].

Accordingly, the Court finds that the ALJ's statements regarding the Plaintiff's daily activities does not result in error.

## V. CONCLUSION

Therefore, for the reasons stated herein, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 8]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).